## Mary H. Harmon *v.* W. I. Magee.

1. Acknowledgment. *Certificate. When made.*
   An officer who has properly exercised the judicial function of taking a married woman's acknowledgment to her deed may perform the clerical act of making the certificate at any time while he remains in office, if third persons' rights do not intervene.

2. Married Woman. *Separate estate. Mortgage.*
   A married woman's mortgage of her land, in which her husband joins, to secure money paid for taxes thereon, and a surgeon's bill for services to herself, binds the *corpus* of the estate conveyed for the protection of those debts.

3. Same. *Borrowed money. Representations as to use.*
   Money borrowed by her through her husband is not protected by such a mortgage, although he represented to the lender that it was to be used for the purchase of family supplies and necessaries, if it was not so used.

4. SAME. *Husband's debt. Chancery pleading. Foreclosure bill.*

    While the mortgage will bind the income of the wife's estate if her husband borrowed and used the money, the bill must allege that it is the husband's debt, and a decree subjecting the income is erroneous if both the pleadings and proof show that it is the wife's.

5. MORTGAGE. *Tender of debt. Discharge of security.*

    A mere proposition by the mortgagee, in a mortgage executed to secure an usurious debt, to pay the debt if the usury is stricken out, without producing the money, or giving time for calculation, is not such a tender as will stop interest, much less is it sufficiently explicit and formal to discharge the mortgage.

APPEAL from the Chancery Court of Lincoln County.

Hon. THOMAS Y. BERRY, Chancellor.

*H. F. Simrall*, for the appellant.

1. Under the rule established by numerous decisions of this court, no liability attaches to the appellant's separate estate for the money which her husband used in his business. The income is not chargeable because the complainant has failed to allege or prove that the note was signed by the husband, or that the trust-deed was executed to secure his debt. The case is rested in the pleadings and proof upon the ground that the money was loaned to the wife in order that she might purchase necessaries. Under a bill like this, filed to subject the *corpus* of the estate, relief by application of the income alone cannot be granted. The appellant is not estopped by her husband's representations that the money was to be used in purchasing family supplies and necessaries, unless it was actually so used. It is the use of the advances which creates the charge. *Caldwell* v. *Hart, ante,* 123. The decree must therefore be reversed.

2. Unless the absolute deed is operative, the case, as to the surgeon's bill and taxes, must also fail. The method of conveying real estate by married women, prescribed in Code 1871, § 2315, which is a substitute for the common-law fine and recovery, must, according to all the authorities, be closely followed, and a deed delivered without any certificate of acknowledgment is void. *Johnston* v. *Wallace*, 53 Miss. 331. A defective certificate of acknowledgment to the deed of a *feme covert* cannot be amended. *Willis* v. *Gattman*, 53 Miss.

721. The safety and integrity of titles absolutely demands that justices of the peace shall not be permitted months or years after instruments have passed out of their hands to make writings on them, drawn from their memories, which shall have effect as judicial acts. This deed was a nullity, and the title could not pass except by a new acknowledgment and delivery, or by a new deed properly acknowledged and certified.

*R. H. Thompson*, on the same side.

1. The tender refused by the mortgagor destroyed the mortgage, for, as said by an ancient writer, " it shall be accounted his own folly that he refused the money when a lawful tender of it was made unto him." Co. Lit. §§ 335, 338. He adds, " that in all cases of condition for payment of a certaine summe in grosse, touching lands or tenements, if lawful tender be once refused, he which ought to tender the money is of this quit and fully discharged forever afterwards." The doctrine is also announced in the following authorities: 9 Bacon Abr. tit. Tender; *Kortright* v. *Cady*, 21 N. Y. 343; 4 Wait's Actions and Defences, 544; *Columbian Building Association* v. *Crump*, 42 Md. 192; *Potts* v. *Plaisted*, 30 Mich. 149; 4 Kent Com. 193, note; *Farmers' Ins. Co.* v. *Edwards*, 26 Wend. 541; *Jackson* v. *Crafts*, 18 Johns. 110; *Arnot* v. *Post*, 6 Hill, 65; Coote on Mortgages, 6; *Tiffany* v. *St. John*, 65 N. Y. 314; *Winter* v. *Coit*, 7 N. Y. 288; Com. Dig., tit. Mortgage " A "; Buller's Nisi Prius, 72; *Boardman* v. *Sill*, 1 Camp. 410, note; *Weeks* v. *Goode*, 6 C. B. N. S. 367; *Coggs* v. *Bernard*, 2 Ld. Raym. 909; *Ratcliff* v. *Davis*, Yelv. 178; *Six Carpenters' Case*, 8 Coke, 146 a; *Pilkington's Case*, 5 Coke, 76.

2. The married woman had no right to borrow money. Her note is void, and the deed of trust, which is but an incident to the debt, is void also. *Viser* v. *Scruggs*, 49 Miss. 705. The money was used by her husband, but it was wrong to subject her income, for the complainant failed to establish the fact that it was the husband's debt. This court will not sanction the evident misconception of the law, which met the Chancellor's approval. *Schumpert* v. *Dillard*, 55 Miss. 348. The doctor's bill constituted no charge on the land. The only repairs for which a married woman can contract, under the statute (Code 1871, § 1780), are those on her property.

3. The deed is void for want of a certificate of acknowledgment, in accordance with Code 1871, § 2315. Neither the married woman nor the officer can impeach an acknowledgment. *Stone* v. *Montgomery*, 35 Miss. 83 ; *Johnston* v. *Wallace*, 53 Miss. 331. Nor can a defective certificate be supplied by parol. *Willis* v. *Gattman*, 53 Miss. 721. The officer cannot, ten months after the signing and delivery of the deed, affix a valid certificate of the acknowledgment taken by him at the date of the deed. The magistrate, who acts judicially, has lost jurisdiction of the parties and subject-matter. *Jamison* v. *Jamison*, 3 Whart. 457 ; *Heeter* v. *Glasgow*, 79 Penn. St. 79 ; *Jourdan* v. *Jourdan*, 9 S. & R. 268 ; *Barnet* v. *Barnet*, 15 S. & R. 72 ; *Watson* v. *Bailey*, 1 Binney, 470 ; *Ennor* v. *Thompson*, 46 Ill. 214 ; *Lickmon* v. *Harding*, 65 Ill. 505 ; *Harty* v. *Ladd*, 3 Oregon, 353 ; *Carpenter* v. *Dexter*, 8 Wall. 513 ; Whart. Evid. §§ 1052, 1053. If he can do so, a matter required to be in writing will rest in parol.

*Sessions & Cassedy*, for the appellee.

The deed of trust is effectual to secure the money borrowed. If the debt is that of the wife, and such as she could contract, it subjects the *corpus* of the estate, and, if the husband's, it binds the income. The bill avers that the money was for Mrs. Harmon, to be expended for necessaries. As she and her husband fraudulently misled Magee, so that he repeated their assurances to him by the allegations of his bill, they should not now be permitted to object to the relief granted because of mistaken allegations instigated by them, but corrected by the proof. Without the absolute deed, the wife's separate estate is liable for the taxes and physician's bill. She can buy bread or an antidote for poison. They are " necessaries." Why then can she not pay for a surgical operation which saves her life ? The taxes are a lien by statute. The deed is, however, valid. The certificate of acknowledgment is only the written evidence of the officer's act, which he is authorized to make without limitation as to the time when he shall do so. It is unnecessary to discuss the effect upon the mortgage of a tender of the debt, because there was none in this case. No money was produced, nor was the sum due ascertained, or time allowed for calculation.

CHALMERS, J., delivered the opinion of the court.

Mrs. Harmon, through her husband, borrowed of Magee one hundred and fifty dollars and executed a note for one hundred and ninety dollars, the excess consisting of usury embodied in the face of the note. Whether the note was signed by the husband does not appear, but both husband and wife joined in a mortgage upon the wife's realty to secure it. The husband represented to the lender that the money was intended for the purchase of family supplies and necessaries, but it was used if not borrowed by him for his own business. Magee subsequently paid taxes on the property to the amount of forty or fifty dollars, and loaned to Mrs. Harmon the further sum of fifty dollars to pay a surgeon for performing an operation upon her person. At the date of the last advance, Mr. and Mrs. Harmon executed to him a deed to the property absolute upon its face, and received from him a defeasance, by which he obligated himself to reconvey to them upon payment, by a day named, of the whole amount due him. The deed was in all respects properly executed and acknowledged, save that the officer taking the acknowledgment failed, at the time, to sign the certificate that the wife had acknowledged it, though the certificate was written out and appended. It was nevertheless recorded, and ten months afterwards the officer, discovering his omission, informed Mrs. Harmon of the fact, and, upon her admission then that she had appeared before him and acknowledged it ten months previously, appended an additional certificate to that effect. No rights of third parties had intervened. No portion of the money due having been paid, this bill is filed to enforce payment by a subjection of the property conveyed. The defence is rested upon several grounds. It is argued that, as to the first mortgage, it imposes no liability upon the wife or her property, because it was neither given to secure a valid debt of her own, nor any debt whatever of the husband's. The debt secured by it was not binding upon her, it is insisted, because it was not contracted for any of the purposes for which by statute she can bind the *corpus* of her estate, and it did not bind her income, because it is not alleged or proved that the husband signed the note, and thereby made it his

debt. The absolute deed (evidently intended to operate as a mortgage) is said to be invalid, because of the failure of the justice to append his signature to the certificate of acknowledgment at the time when the acknowledgment was made.

Addressing ourselves to a consideration of the last proposition, we cannot give it our sanction. The acknowledgment of a married woman is an essential part of a conveyance executed by her. If wanting, it cannot be supplied; if defective, it cannot be amended; and, if properly authenticated, it cannot be gainsaid nor questioned, save for fraud. *Johnston* v. *Wallace*, 53 Miss. 331; *Willis* v. *Gattman*, 53 Miss. 721; *Allen* v. *Lenoir*, 53 Miss. 321. The officer who takes it performs a judicial act in determining whether it was acknowledged in the mode and manner required by law; and he is required by his certificate to authenticate the judicial conclusion to which he has arrived. This certificate he must sign; and, if he fails to do so, the instrument cannot be recorded, or, if recorded, will not constitute notice to third persons. But there is no requirement in the statute that the certificate shall be made, much less signed, in the presence of the woman. We apprehend that in practice it frequently, if not usually, happens that the certificate is written out and signed after she has retired. If an hour elapses, or a day, is the instrument thereby avoided? We think not. The judicial act has been performed when she has made and the officer has received her separate acknowledgment. The memorial of it, the making-up of the record, so to speak, which follows afterwards, is a ministerial or clerical act, and, where the rights of third persons have not intervened, may be done at any time while the officer remains in office. We conclude, therefore, that the second mortgage (the absolute deed) was properly executed by the wife, and that it protects all the valid debts due by her. This was the view taken by the Chancellor, and he decreed that the, *corpus* of her estate was bound for the taxes paid and the money loaned to pay the surgeon, and, treating the first loan of one hundred and fifty dollars as a debt of the husband, for which the wife had pledged her separate estate, he held that it bound the income of the property. We approve his ruling as to the taxes and the sur-

geon's bill, but with reference to the one hundred and fifty dollar loan this serious difficulty is presented : — The complainant distinctly charges in his bill that the money was loaned solely and exclusively to the wife upon the faith of her separate property, and for the purchase of family supplies, while the proof shows that, whatever may have been the original object in obtaining the money, it was in fact used by the husband in his business.

It is settled law in this State that the contract of a married woman for borrowed money is void, and that the lender can only recover against her by a species of subrogation ; namely, by showing that his money was in fact used in the purchase of some of those things for which she is by law authorized to contract, and therefore he should be substituted to the rights of those who furnish them.   It was held in *Wright* v. *Walton*, 56 Miss. 1, that, even though the lender had been induced to part with his money by assurances that it would be thus used, a recovery would be defeated, if a different application of it was in fact made.   In this case the complainant, misled by the assurances given him, rested his case, both in his pleading and proofs, solely upon the allegation that it was the debt of the wife for which the *corpus* of her estate was liable.   He neither avers that the husband signed the note with her, nor does he produce the note itself.   If, in fact, the husband signed it, he thereby made it his debt, and the mortgage by the wife would bind the income of the property, as held in *Reed* v. *Coleman*, 51 Miss. 835.   It was not even essential in this case that he should have signed the note, for the circumstances of his obtaining and using the money made it his debt, and it was competent for the wife to bind the income of her property for it, whether due by note or open account.   But the complainant, having in his pleading averred the debt to be solely that of the wife, and having failed, by a production of the note, to show a liability upon the part of the husband, cannot, without amendment, be allowed to recover upon a different theory.   The decree will be reversed and cause remanded, with leave to the complainant to amend as he may be advised.

Lastly it is urged by the defendant that, before the bringing

of this suit, she tendered the full amount due by her, and that, while this does not acquit her of the personal obligation, it does discharge and vacate the mortgage upon her property. It has been settled from the earliest times that a perfect and technical legal tender will discharge all mortgages, pawns, pledges, and collateral securities, though the personal obligation to pay the debt remains, and it has been held that it will have this effect though not continuous, nor brought into court with the plea. The ancient and perhaps the general rule is, that, in order to have this effect, it must be made upon the very day that the debt becomes due, known in this connection as the law-day. The Court of Appeals of New York, in the case of *Kortright* v. *Cady*, 21 N. Y. 343, ruled by a divided bench that it was immaterial upon what day the tender took place, and that its effect was to discharge the security. The question is elaborately discussed in the several opinions, and the doctrine traced from the earliest times. It was well said by the Supreme Court of Michigan, in *Potts* v. *Plaisted*, 30 Mich. 149, that in view of the serious consequences to the creditor of a doctrine that must often result in the absolute destruction of the debt, and in view of the strong temptation which must exist to make, or at least to prove, sham tenders, the evidence on the subject "should be so full, clear and satisfactory, as to leave no reasonable doubt that the tender was so made that the holder must have understood it at the time to be a present, absolute and unconditional tender, intended to be in full payment and extinguishment of the mortgage, and not dependent upon his first executing a receipt or discharge, or any other contingency. And the holder must, in every case, have a reasonable opportunity to look over the mortgage and accompanying papers, to calculate and ascertain the amount due, and, if such papers are not present, he must be allowed a reasonable time to get them and make the calculation." The pretended tender in the case at bar fulfilled none of the requirements here laid down. Indeed it was in no proper sense a tender at all. It was a mere proposition or offer by Mrs. Harmon's attorney to pay what was due, if all usurious interest was stricken from the mortgage. No money was produced, nor is it shown that any was present. It was not pro-

posed to pay it then and there, nor was any thing said as to when it would be paid. None of the papers were at hand, nor was any thing said about procuring them or giving time for calculation. The offer did not amount to such a tender as would stop interest, much less to one sufficiently explicit and formal to discharge the mortgage.

*Decree reversed and cause remanded.*